UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUENTIN L. KOPP,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES SECRET SERVICE,<br><br>    Defendant. | Case No. 18-cv-04913-JCS<br><br>**ORDER REGARDING MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 29 |

## I. INTRODUCTION

Plaintiff Quentin Kopp brought this action seeking production of documents pursuant to the Freedom of Information Act ("FOIA"). Defendant United States Secret Service provided the documents sought relatively soon after Kopp filed the case. Kopp now moves for attorneys' fees and litigation costs. The Court held a hearing on May 31, 2019. For the reasons discussed below, Kopp's motion is GRANTED in part and DENIED in part. Kopp shall recover a total of $21,692.66 in fees and costs.

## II. BACKGROUND

### A. Factual Record

Concerned about "the amount of tax-payer dollars being spent to protect President Trump's adult children as they promote the Trump-family's businesses oversees," Mot. (dkt. 29) at 2, Kopp sent the Secret Service Office of Government and Public Affairs a letter requesting "public records which show the following:"

> (1) The number of Secret Service personnel and their job descriptions accompanying Donald Trump, Jr. to and from India this week;
>
> (2) The cost of the transportation, meals, lodging, salaries, and all other emoluments for all Secret Service personnel on such trip;

> (3) Any rules of Secret Service relating to justification, responsibility,
> and duties of Secret Service detail members on such trip, plus the
> dates of departure and return.

Kopp Decl. (dkt. 29-2) Ex. 1; Tyrell Decl. (dkt. 31-1) Ex. 1. Although the letter was dated February 27, 2018 and Kopp states that he mailed it on that date, the letter was postmarked March 22, 2018, and the Secret Service FOIA office received it (after off-site screening) on April 11, 2018. Kopp Decl. ¶ 2; Tyrell Decl. ¶ 4 & Ex. 1. Kopp sent a second, substantively identical letter dated April 26, 2018, which the Secret Service FOIA office received on May 21, 2018. Tyrell Decl. ¶ 5 & Ex. 2.

The Secret Service responded by letter dated May 15, 2018, acknowledging receipt of Kopp's letter on April 11, 2018 but stating that additional information was required. Kopp Decl. Ex. 2. That letter assigned three different file numbers to the enumerated parts of Kopp's request: number 20180820 to part (1), number 20180821 to part (2), and number 20180822 to part (3). *Id.* Without identifying defects specific to any of those particular requests, the letter stated that the Secret Service had "determined that [Kopp's] request is too broad in scope, or that [it] did not specifically identify the records which [he was] seeking," and advised Kopp that, when possible, FOIA requests should identify "specific information about each record sought, such as the date, title or name, author, recipient, and subject matter of the record." *Id.* The letter stated that Kopp's request was not "perfected" because it "failed to reasonably describe the records [he was] seeking," and that the Secret Service therefore could not "initiate a search for responsive records." *Id.*

Kopp states that he mailed a response on May 29, 2018, which was not returned as undeliverable, in which he disagreed with the Secret Service's determination that the requests were too broad, but stated that "in the interest of resolving this matter quickly," he would provide additional details. Kopp Decl. ¶¶ 5–6 & Ex. 3. Kopp provided several categories of documents that his original requests "might include." *Id.* With respect to his first request, Kopp listed:

- Duty logs or rosters showing each Secret Service agent assigned to Donald Trump Jr. during the relevant period; and

- Work schedules or itineraries for Secret Service personnel assigned to Donald Trump Jr. on the week of February 18, 2018.

2

*Id.* With respect to his second request, Kopp listed:

- Invoices or receipts reflecting the cost of travel, including but not limited to invoices for lodging and transportation.
- Paystubs for Secret Service agents who accompanied Donald Trump Jr. on his trip; and
- Claims for reimbursement regarding purchases made by Secret Service agents who accompanied Donald Trump Jr.;
- Budgets or ledgers reflecting the costs of Donald Trump Jr.'s trip to India on the week of February 18, 2018.

*Id.* And with respect to his third request, Kopp listed:

- Any written policies and procedures relating to duties and responsibilities of Secret Service agents as they pertain to agents accompanying a family member of the President of the United States on private travel;
- Any written rules and regulations regarding the number of agents who generally accompany a family member of the President of the United States on private travel;
- Any written policies and procedures regarding how such trips are staffed in general; and
- Any written rules and regulations specifically concerning the duties of Secret Service agents who accompanied Donald Trump Jr. on his trip to and from India the week of February 18, 2018.

*Id.*

According to Secret Service Supervisory Freedom of Information Act Officer Kevin Tyrell, the Secret Service has no record of receiving Kopp's May 29, 2018 response until it was served with Kopp's complaint in this action on August 23, 2018, which included the letter as an attachment. Tyrell Decl. ¶¶ 10–12. Once the Secret Service was served with the complaint, however, "this letter provided the Secret Service with the information needed to search for the records [Kopp] had requested." *Id.* ¶ 13. The Secret Service thereafter produced ninety-three pages of documents within twenty business days of receipt, and about a month later provided a supplemental production of four additional documents. *Id.* ¶¶ 14–15. Kopp does not argue that the Secret Service's eventual document production was incomplete or insufficient in any way except for the failure to produce documents before Kopp filed this action. The Secret Service later produced the same documents to three journalists in response to the journalists' own FOIA

3

requests. *Id.* ¶¶ 18–19.

**B. Arguments**

Kopp moves for an award of fees and costs based on the Secret Service's failure to produce documents in response to his request and its production of documents after he filed this lawsuit. The Secret Service argues that Kopp is not entitled to fees because his original requests were overly broad and vague, the Secret Service was entitled to request clarification, and it did not receive Kopp's subsequent letter clarifying his requests until it was served with Kopp's complaint. The Secret Service argues that the clarification, not the legal action in itself, prompted it to produce documents. The parties also dispute whether Kopp requested documents for public benefit, and the Secret Service objects to aspects of Kopp's requested fees as unreasonable.

**III. ANALYSIS**

**A. Legal Standard**

Under FOIA, "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). "[A] complainant has substantially prevailed if the complainant has obtained relief through either—(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.* § 552(a)(4)(E)(ii). For a plaintiff to be eligible for fees under the latter prong, where an agency voluntarily changes its position, the plaintiff's complaint must have been the "catalyst" for the change, with the following factors relevant to that determination: "(1) 'when the documents were released,' (2) 'what actually triggered the documents' release,' and (3) 'whether [the plaintiff] was entitled to the documents at an earlier time.'" *First Amendment Coal. v. U.S. Dep't of Justice*, 878 F.3d 1119, 1129 (9th Cir. 2017) (quoting *Church of Scientology of Cal. v. U.S. Postal Serv.*, 700 F.2d 486, 492 (9th Cir. 1983)).[1]

---

[1] *Church of Scientology* was abrogated by subsequent decisions by the Supreme Court and Ninth Circuit, buts its test has since been reinstated in light of amended statutory language. *See First Amendment Coal.*, 878 F.3d at 1127–28.

4

"Once a court deems a party eligible to recover fees and costs, it then exercises its 'discretion to determine whether the plaintiff is entitled to fees.'" *Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 994 (N.D. Cal. 2012) (quoting *Or. Nat. Desert Ass'n v. Locke*, 572 F.3d 610, 614 (9th Cir. 2009)). The question of whether to award fees to a party who is eligible for them "is left to the sound discretion of the trial court." *Church of Scientology*, 700 F.2d at 492. Factors relevant to that analysis may include, but are not limited to, "(1) the benefit to the public, if any, deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records sought had a reasonable basis in law." *Id.*

### B. The Secret Service Did Not Receive Kopp's Clarifying Letter

The parties dispute the significance of Kopp's May 29, 2018 letter, with Kopp suggesting that his mailing of the letter was sufficient, while the Secret Service maintains that it did not receive the letter. The record reflects that Kopp mailed the letter but that the Secret Service has no record of receiving it. With no evidence to the contrary, the Court therefore finds as a factual matter that Kopp's clarifying letter was sent but not received, and holds that the Secret Service had no obligation to respond to that letter until it received a copy of it as an attachment to Kopp's complaint. Because the Secret Service produced documents to Kopp's satisfaction after it was served with Kopp's complaint, the analysis below focuses on whether Kopp is entitled to attorneys' fees for the Secret Service's failure to produce documents in response to Kopp's *original* letter and does not fault the Secret Service for its failure to respond to a letter there is no evidence it received before this action was filed.[2]

### C. Kopp is Eligible for and Entitled to His Fees in Part

There is no dispute that a "voluntary or unilateral change in position by the agency," *see* 5 U.S.C. § 552(a)(4)(E)(ii), occurred after Kopp filed this action. The Secret Service argues,

---

[2] As Kopp correctly notes, there is no requirement that a FOIA requester use certified mail or some other form of delivery confirmation to submit a request. Nevertheless, there is nothing to stop a requester who wishes to avoid any doubt about receipt from using such a service, and a requester who declines to do so runs the risk that a document might not be delivered—or that there might be no way to prove that delivery occurred.

however, that Kopp's judicial complaint did not sufficiently *cause* the change to support an award of fees, and that its changed position in fact resulted from the clarification letter *attached to* Kopp's complaint, not from the fact that Kopp commenced litigation.

Kopp argues that the Secret Service was required to grant or deny his application within twenty business days, while the Secret Service argues that it was entitled request additional information pursuant to its own regulations. Neither party addresses the provision of FOIA stating "that the agency may make one request to the requester for information and toll the 20-day period while it is awaiting such information that it has reasonably requested from the requester under this section." 5 U.S.C. § 552(a)(6)(A)(ii)(I). The regulation on which the Secret Service relies—6 C.F.R. § 5.3(c), providing that the Secret Service may "seek additional information from the requester" and allow thirty days to respond—comports with that statute. Having failed to address the statute, the parties also do not address its requirement that if an agency asks for additional information, such information must be "reasonably requested." *See* 5 U.S.C. § 552(a)(6)(A)(ii)(I).

The Secret Service's initial response to Kopp used boilerplate language nonspecific to his particular requests. The only explanation that the Secret Service now provides for its purported need for clarification is as follows:

> The FOIA request was vague as to what "emoluments for all Secret Service personnel" and "rules of Secret Service relating to justification … of Secret Service detail members on such a trip" meant. And even though parts 1 and 2 of the request sought records related to a specific trip, part 3, which asked for records about the responsibilities and duties of Secret Service members on the trip, was much broader.

Opp'n (dkt. 31) at 14 (ellipsis in original). This objection identifies no defect in Kopp's first request, regarding the number of agents and their job descriptions, and the Secret Service does not explain why it would have been justified in failing to provide documents in response to that request based on purported defects in Kopp's *other* requests, particular after the Secret Service itself chose to treat the three requests as separate by assigning them separate file numbers.

The only objection to the second request—for documents showing "[t]he cost of the transportation, meals, lodging, salaries, and all other emoluments for all Secret Service personnel on such trip"—appears to be the use of the word "emoluments." Black's Law Dictionary defines

6

the term as meaning "Any advantage, profit, or gain received as a result of one's employment or one's holding of office." *Black's Law Dictionary* 601 (9th ed. 2009). The Secret Service should have been able to interpret the request as calling for documents showing the compensation and expenses incurred by agents on the trip, or if it perceived some ambiguity that the Court does not, at the very least should have identified its concern in its request for clarification. At the hearing, the Secret Service renewed its argument that the word "emoluments" somehow rendered the request unclear, suggesting that the Constitution's prohibition of emoluments from foreign governments creates ambiguity. As the Court noted, the structure of the request—seeking documents regarding "transportation, meals, lodging, salaries, and all *other* emoluments" (emphasis added)—makes clear that it does not refer only to emoluments from foreign sources. Moreover, the Constitution does not *define* the word "emoluments" as requiring foreign origin, it merely prohibits officers of the United States from receiving emoluments *if* those emoluments come from a foreign government or ruler. The Foreign Emoluments Clause of the Constitution reads as follows:

> [N]o Person holding any Office of Profit or Trust under them, shall, without the Consent of the Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State.

U.S. Const. art. I, § 9, cl. 8. Taken to its logical conclusion, the Secret Service's argument would suggest that any FOIA request pertaining to "presents, "offices" or "titles," regardless of whether the request includes any reference to this clause of Constitution, would similarly suffer from inherent ambiguity as to whether the requester is referring to the *foreign* presents, offices, and titles prohibited under Article I. The argument is baseless.

The Secret Service's ability to identify documents without issue after it received Kopp's May 29, 2018 clarification letter sheds some light on whether it was reasonable to request additional information to begin with. For the most part, Kopp's clarification letter did not narrow his requests or provide any additional guidance beyond categories of documents that an outsider might guess would include the information he sought. The letter did not purport to limit his requests, and by its plain language provided categories only as *examples* of where responsive

7

documents might be found. At least with respect to the first two requests—regarding the number of agents and their compensation—it is not clear why the Secret Service would not have been able to identify on its own the categories that Kopp listed in his clarification letter, or how those categories narrow in any way the scope of the original requests. The Court concludes that the additional information the Secret Services required with respect to these requests was not "reasonably requested," and the Secret Service therefore failed to meet its obligations under FOIA when it sent a boilerplate request for clarification rather than providing documents.

Kopp's third request was less clear. A literal reading of "[a]ny rules of Secret Service relating to justification, responsibility, and duties of Secret Service detail members on such trip" might require the Secret Service to produce virtually all rules, on any topic, that govern its agents while on duty, because rules that govern agents generally would also apply on the trip. The final phrase of this request, "plus the dates of departure and return," adds to the confusion. Semantically, the request could be read as seeking "rules relating to . . . the dates of departure and return"—the meaning of which is less than clear—or if the phrase were read as simply requesting documents showing the dates of departure and return, it is not clear why it is included as part of the request regarding rules, when the other documents that Kopp sought were broken out into separate topics. Kopp's May 29 letter more clearly narrowed this third request than it did his first two, by clarifying that this request was focused on rules specific to the particular trip or to "agents accompanying a family member of the President of the United States on private travel" and implicitly dropping the portion of the request regarding departure and return dates. *See* Kopp Decl. Ex. 3 at 2–3. Although the Secret Service should have responded within the twenty-day deadline (as opposed to four days late) and could have more clearly identified the request's deficiencies, the scope of the original request was unclear, and the Secret Service's request for clarification was reasonable.

The Court concludes that Kopp is eligible for attorneys' fees with respect to his first two requests but not with respect to his third request, because although the Secret Service did not produce any documents until Kopp filed this action, Kopp was only "entitled to the documents at an earlier time" with respect to the first two requests. *See First Amendment Coal.*, 878 F.3d at

8

1129. The Secret Service had no basis for failing to produce documents in response to the first two requests, Kopp should not have been required to provide clarification of them, and the Court therefore concludes that Kopp's lawsuit served as the catalyst for production of documents in response to those requests. With respect to the third request, the Secret Service was not obligated to produce documents in response to Kopp's original letter, and the Court concludes that the catalyst for production was the additional clarification in the letter attached to Kopp's complaint, not the fact of a lawsuit to induce compliance with any already-established obligation. Because the fees that Kopp incurred are not clearly broken up by the request that they pertain to, as a rough but best available approximation, the Court reduces the fees to which Kopp would otherwise be eligible by one third.

As noted above, once a plaintiff is found to be *eligible* for fees, whether the plaintiff is *entitled* to fees is left to the discretion of the district court, based on factors including "(1) the benefit to the public, if any, deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records sought had a reasonable basis in law." *Church of Scientology*, 700 F.2d at 492. Kopp's personal interest in how public funds are spent on the protection of presidential relations is legitimate, and the topic is also a matter of public interest, as evidenced by several journalists requesting and receiving the same documents.[3] There is no indication that Kopp had any commercial interest in the documents, and as discussed above, the Secret Service had no reasonable basis for failing to provide documents in response to Kopp's first two requests.[4] The Court therefore concludes that Kopp is "entitled" to fees with respect to his first two requests.

---

[3] The Court declines to resolve the disputed issue of the extent to which Kopp provided documents to or otherwise coordinate with journalists. There is no obligation that a claimant actually publish documents obtained in order to be eligible for attorneys' fees, and the Court would find Kopp eligible for fees based on the nature of his interest and the lack of reasonable basis for withholding even if his request did not directly result in a broader public benefit.

[4] If Kopp were *eligible* for the full amount of his fees—contrary to the conclusion above finding him eligible only for fees in proportion to his two originally-sufficient requests—the Court as a matter of discretion would conclude that Kopp is only *entitled* to two-thirds of the total amount based on the reasonableness of the Secret Services' failure to produce documents in response to the overbroad and unclear third request.

9

**D. Reasonableness of Fees Requested**

"The [FOIA] plaintiff who has proven both eligibility for and entitlement to fees must submit his fee bill to the court for its scrutiny of the reasonableness of (a) the number of hours expended and (b) the hourly fee claimed." *Long v. IRS*, 932 F.2d 1309, 1313–14 (9th Cir. 1991). In considering the reasonableness of hours expended, courts "[b]y and large . . . defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (considering fees awarded under 42 U.S.C. § 1988).

The Secret Service objects to the twenty-eight hours billed to prepare Kopp's complaint, including time billed by a law firm partner, for which—according to the Secret Service's classification of Kopp's attorneys' billing records—Kopp requests more than $18,000 in fees. *See* Opp'n at 16–18. While the amount is relatively high on its face, courts have in at least some cases awarded larger amounts for preparing FOIA complaints (albeit longer complaints than the six-page complaint in this case),[5] and the Court will largely defer to counsel's determination of how much time was required, recognizing that significantly more work goes into the process of determining the scope of a complaint than merely typing the document. Aside from its broad argument that the total is simply too high on its face, the Secret Service only objects to handful of specific time entries, and the Court limits its reductions of Kopp's request to those more specific objections.

The Secret Service argues that Kopp is not entitled to fees for billing entries that include references to press conferences. Opp'n at 18. As Kopp notes in his reply, courts have in some cases allowed fees for "media relations . . . incurred to further a client's litigation goals." *Sierra Club v. EPA*, 75 F. Supp. 3d 1125, 1150 (N.D. Cal. 2014); *see* Reply (dkt. 32) at 12. Here, however, neither Kopp's briefs nor his attorneys' billing records explain why outreach to the press was necessary to any litigation goal. The Court excludes time entries for 6.6 hours by Justin

---

[5] *See, e.g.*, Opp'n at 17 (acknowledging that a court awarded $20,4000 for forty hours of work on a FOIA complaint in *ACLU Immigrants' Rights Projects v. U.S. Immigration & Customs Enforcement*, No. 16-cv-06066-JSC, 2018 WL 488997, at *5–6 (N.D. Cal. Jan. 19, 2018)).

Berger and 2 hours by Mallory Barr that refer in part to press conferences and provide insufficient information to apportion that disallowed time as compared to other activities included within the same block-billed entries. *See* Barr Decl. (dkt. 29-1) Ex. 2 at 1, 2.

The Secret Service objects to 3.4 hours billed by senior paralegal Valerie Barretto for the following time entry: "Research regarding process of service on defendant for summons and complaint and report to MAB [presumably, associate Mallory Barr] regarding same; prepare complaint for filing and service." *See* Barr Decl. Ex. 2 at 3; Opp'n at 19. The Secret Service argues that because Kopp's attorneys' law firm has extensive experience in litigation, including against government defendants, the time billed is excessive for a senior paralegal to determine how to serve a government defendant. Opp'n at 19. The Court defers to counsel's judgment on this entry and declines to reduce it. *See Moreno*, 534 F.3d at 1112. The Court similarly declines to reduce the 7.9 hours that associate Barr billed in relation to case management conferences, or the 20 hours she billed to research and draft the present motion.[6] *See id.*; *cf.* Opp'n at 20.

The Secret Service objects to 2.7 hours that senior associate Adam Shapiro billed and 2.5 hours that paralegal Madeleine Kerr billed for work on Kopp's FOIA request and related correspondence months before Kopp filed his complaint. Opp'n at 20–21. FOIA's attorneys' fees provision applies only to litigation in court; "work performed during administrative proceedings prior to litigation is not recoverable under FOIA." *ACLU Immigrants' Rights Projects v. U.S. Immigration & Customs Enforcement*, No. 16-cv-06066-JSC, 2018 WL 488997, at *3 (N.D. Cal. Jan. 19, 2018) (citing *Nw. Coal. for Alternatives to Pesticides v. Browner,* 965 F. Supp. 59, 65 (D.D.C. May 12, 1997)). Kopp cites no case holding to the contrary, and the Court excludes these time entries from his award of fees.

More broadly, the Secret Service contends that Kopp should not recover fees incurred after the Secret Service completed production of documents in late October, 2018, because a FOIA plaintiff's claim becomes moot on full production of the documents sought. Opp'n at 19–20. As

---

[6] Kopp requested oral argument to allow Barr, an attorney recently admitted to the Bar, an opportunity to argue a motion in keeping with the Court's commitment to attorney development. Kopp's briefs did not seek prospective attorneys' fees for such argument. The Court therefore does not award additional fees for time spent arguing the motion.

11

the Secret Service acknowledges, however, a prevailing plaintiff is generally entitled to "fees on fees," i.e., fees incurred in pursuing a motion for attorneys' fees. *Id.* at 20–21 (citing, *e.g.*, *Comm'r, INS v. Jean*, 496 U.S. 154 (1990)). Because the issue of fees was not resolved by the production of documents, further litigation beyond that point was necessary, and fees for such litigation were reasonably incurred.[7] The Secret Service also argues that any award of "fees on fees" should be reduced commensurate with any reduction of fees for the underlying litigation. *Id.* at 21 (citing *Jean*, 496 U.S. at 163 n.10). The Court concludes that the flat reduction of fees by one third to account for Kopp's insufficient third request accomplishes this purpose by reducing both fees for substantive litigation and fees for litigation of fees, thus accounting for a reasonable approximation of the extent to which Kopp fails to prevail on his present motion.

The Secret Service also objects to partner Justin Berger's hourly rate of $850, arguing that Kopp has cited no case awarding more than $700 per hour for an attorney's work on a FOIA matter. Opp'n at 17–18. Kopp argues that an $850 rate is reasonable because a decision from this district awarded fees at $700 per hour in 2012, implying—but not explicitly arguing or presenting evidence to show—that inflation of market rates since that time accounts for the increase. Reply at 14. Kopp has neither identified any FOIA case awarding fees at the rate sought for Berger nor explained why this case is particularly challenging or novel such that an apparently unprecedented billing rate (for a FOIA case) should be awarded. Put differently, there is no evidence that $850 per hour is in fact a fair market rate for the particular work performed. The Secret Service does not appear to object to a rate of $700 per hour for Berger, and the Court awards fees at that rate for his allowable time entries. The Secret Service also does not object to any other timekeeper's billing rates, and the Court therefore awards fees for other timekeepers at the rates requested.

Taking into account the reductions above, Kopp is entitled to $30,612.50 before applying the one-third reduction for his insufficient third request, as summarized in the following table:

---

[7] To the extent that the reasoning of *Echols v. Morpho Detection, Inc.*, No. CV 13-3162-JFW (JEMx), 2014 WL 953380, at *2 (C.D. Cal. Mar. 11, 2014), would counsel a different result, this Court respectfully disagrees with that decision.

| Timekeeper | Rate Sought | Hours Sought | Rate Allowed | Hours Allowed | Fees Allowed |
|---|---|---|---|---|---|
| Mallory Barr | $425 | 57.9 | $425 | 55.9 | $23,757.50 |
| Justin Berger | $850 | 13.6 | $700 | 7.0 | $4,900.00 |
| Adam Shapiro | $600 | 4.4 | $600 | 1.7 | $1,020.00 |
| Valerie Barretto | $275 | 3.4 | $275 | 3.4 | $935.00 |
| Madeleine Kerr | $275 | 2.5 | $275 | 0.0 | $0.00 |
| | | | | Subtotal: | $30,612.50 |

Reducing that amount by one third, Kopp is entitled to fees totaling $20,408.33.

The Secret Service also objects to aspects of Kopp's request for $1,284.95 in litigation costs. These expenses are well founded. Although Kopp's initial request for $468.14 for "Travel" appeared incongruous given that Kopp's attorneys are local, the declaration submitted with his reply explains that the bulk of that cost is the $400 filing fee (apparently mischaracterized in the initial motion), and travel from Burlingame to San Francisco for court appearances accounts for the remainder. Kopp's request for these costs is granted.

## IV. CONCLUSION

For the reasons discussed above, Kopp's motion for attorneys' fees and costs is GRANTED in part and DENIED in part. Kopp shall recover fees totaling $20,408.33 and litigation costs of $1,284.33. As this motion was the only matter remaining to be decided, the Clerk is instructed to enter judgment in favor of Kopp and to close the file.

**IT IS SO ORDERED.**

Dated: May 31, 2019

JOSEPH C. SPERO
Chief Magistrate Judge